# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The person of Jose Adan GONZALEZ-Torres (DOB: ▮▮▮▮) | )<br>)<br>) Case No.  **25mr488**<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(5) | Alien in Possession of a Firearm |
| 18 U.S.C. § 924 | Penalties |

The application is based on these facts:
The affidavit of Special Agent Shayne Beckford is incorporated herein by reference. AUSA Jack E. Burkhead has reviewed and approved the affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Gavin Hayes
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__Telephonically Sworn and Electronically Signed__ *(specify reliable electronic means)*.

Date: __3/18/2025__

_____
Judge's signature

Steven C. Yarbrough, US Magistrate Judge
*Printed name and title*

City and state: __Albuquerque, NM__

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER
RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Gavin Hayes, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Justice Procedure for a warrant to search the body of the suspect, Jose Adan GONZALEZ-Torres ("GONZALEZ") to collect Deoxyribonucleic Acid (DNA) samples by way of a buccal swabs.

2. GONZALEZ has been charged with violations of 18 USC §922(g)(5) – alien in possession of a firearm.

3. I am a Special Agent with Homeland Security Investigations (HSI) and have been since April 4, 2024. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

4. I have completed the Criminal Investigators Training Program (CITP) and Homeland Security Investigations Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. These training programs included topics such as constitutional law, customs and immigration law, civil and criminal forfeiture, narcotics investigations, financial investigations, physical and electronic evidence, investigative methods, and more.

5. Prior to my tenure as a Special Agent, I was a sworn law enforcement officer employed by the city of Greensboro, North Carolina. I served in that position for over six years, during which I was primarily assigned to the patrol bureau. My primary responsibilities were responding to 911 calls and

investigating violations of criminal law. I investigated and assisted with investigating hundreds of felony and misdemeanor violent crimes, drug offenses, weapon violations, fraud offenses, impaired driving offenses, and more. I regularly established probable cause for warrantless arrests, arrest warrants, and search and seizure warrants for the aforementioned crimes.

6. My training as a Greensboro Police Officer included attending the Greensboro Police Academy, which included North Carolina's Basic Law Enforcement Training (BLET) program. Covered topics included constitutional law, criminal law, patrol duties, basic narcotics investigations, criminal investigations, basic interviewing, communication, and mental health awareness. Since completing the Greensboro Police Academy, I was certified by the State of North Carolina as a chemical analyst and as a radar operator. I received further specialized training in the areas of fundamentals of the investigative process, death and violent crime scene management, standardized field sobriety testing, introduction to drugged driving, drones for first responders, and roadside interview and detecting deception.

7. Prior to my tenure as a Greensboro Police Officer, I received my education at Elon University in North Carolina. I received a Bachelor of Arts with majors in Public Health Studies and Policy Studies, and minors in Leadership Studies and Criminal Justice Studies.

8. I have also acquired knowledge and information about such offenses, and the various means and methods by which they are furthered from numerous sources, including formal and informal training from other law enforcement officers, investigators, and Special Agents ("SA"); interviews of informants and arrestees, and interviews of other knowledgeable individuals.

9. I make this affidavit based upon my own personal knowledge, which is substantially derived from my participation in the investigation, as well as that of fellow agents and officers who have participated in the investigation.

**PARAMETERS**

10. The statements contained in this affidavit are based upon my personal knowledge and/or on information provided by other domestic law enforcement officers, agents, and personnel, as well as on your affiant's experience, background, and training. Because this affidavit is being submitted for the limited purpose listed above, I have not included each and every fact known to him concerning this investigation. I have set forth only those facts believed to be necessary to establish probable cause to support a search warrant to collect GONZALEZ's DNA. Where statements made by others or from documentary review have been reported, said statements are reported in substance and in part, unless otherwise noted.

**PROBABLE CAUSE**

11. On January 9, 2025, at around 10:44 AM, Bureau of Indian Affairs ("BIA") Officer Nick Jackson was conducting routine patrol traveling northbound on Interstate 25 in Sandoval County, New Mexico. Officer Jackson, who is cross-commissioned with the Sandoval County Sheriff's Office ("SCSO"), observed a black Chevrolet Silverado displaying the New Mexico license plate of BGHB75 traveling northbound ahead of him. Officer Jackson determined that the Chevrolet's registration was expired. Officer Jackson also observed that the Chevrolet had window tint which he believed was in violation of state motor vehicle window tinting regulations. As such, Officer Jackson initiated a traffic stop on the Chevrolet.

12. Officer Jackson spoke with the driver of the Chevrolet while SCSO Deputy AJ Noriega arrived and spoke with the passenger, who was identified by New Mexico Driver's License as GONZALEZ. GONZALEZ appeared to only speak Spanish, so Deputy Noriega utilized a translator for this conversation. GONZALEZ stated he was coming from Gallup, NM, where he had been helping his sister with vehicle repairs. Deputy Noriega asked GONZALEZ if there was anything illegal in the vehicle. In response, GONZALEZ stated there was a firearm in the car, which he had forgotten to return to a friend. However,

GONZALEZ stated the firearm was not illegal. Deputy Noriega observed a small straw cowboy hat hanging from the vehicle's rearview mirror which he recognized as a symbol of the La Mayiza cartel.

13. While Officer Jackson was continuing to conduct his enforcement actions, Deputy Noriega retrieved his drug detection dog ("Zarah") from his patrol car. Zarah is trained and nationally certified as a drug detection dog by both the National Narcotic Detector Dog Association and the National Police Canine Association. Zarah alerted to the presence of an odor of narcotics at both the driver and passenger doors of the vehicle.

14. Officer Jackson learned from the driver that the trip had been for a construction project in Gallup, though they had gone further to a small town near Phoenix, AZ for a different construction project. The driver made no claims of stopping to help with GONZALEZ's sister's car. Because of the conflicting stories, K9 alert, and the presence of possible cartel-affiliated iconography, Deputy Noriega requested consent to search the Chevrolet from both GONZALEZ and the driver. Both individuals consented to a search of the vehicle.

15. During the search, officers located a firearm in the center console of the car. The firearm was a black .45 caliber Springfield 1911 pistol with custom grips featuring naked women on each side. Officers determined the pistol's serial number to be "NM 644652", which was determined to be stolen out of Jefferson County, CO. GONZALEZ also consented to a search of his cell phone, which contained pictures of the pistol before its grips were altered.

16. GONZALEZ stated to Deputy Noriega that he is unlawfully present in the United States.

17. In the month of February 2025, Deputy Noriega relayed the circumstances of this arrest to me. I conducted an investigation into the alienage of GONZALEZ and determined that GONZALEZ is unlawfully present in the United States. As such, the district court, in cause number 25-mj-191, issued a criminal complaint charging GONZALEZ with a violation of 18 U.S.C. §§ 922(g)(5) and 924, that being

Alien in Possession of a Firearm.  The court additionally issued a warrant for GONZALEZ's arrest, which I executed on February 11, 2025.

18. I believe GONZALEZ previously entered the United States without inspection based on the following information:

   a. GONZALEZ's admission to Deputy Noriega that he is unlawfully present in the United States.

   b. While processing GONZALEZ subsequent to being taken into federal custody on the arrest warrant, SA Charles Fidler asked GONZALEZ standard booking questions. ICE Deportation Officer ("DO") Guillermo Diaz-Torres translated the questions. SA Fidler asked GONZALEZ where he was born. GONZALEZ stated he was born in Chihuahua, Chihuahua, Mexico. SA Fidler asked GONZALEZ his citizenship. GONZALEZ stated he is a Mexican citizen.

   c. A search of GONZALEZ's NM Driver's License shows that it is a valid license, but it does not have a Social Security Number ("SSN") attached. In my training and experience, and that of other Agents with whom I have consulted, New Mexico will always attach a person's SSN to the driver's license return unless the person does not have an SSN, as would be the case for an individual who is unlawfully present in the United States.

   d. I was unable to locate a record of GONZALEZ in law enforcement databases, including databases of arrests by law enforcement or apprehensions by US Customs and Border Protection, visa applications, border crossing history, parole records, asylum applications, and other queries which would show an individual's lawful status or attempts to obtain lawful status in the United States.

19. The seized firearm is more fully described as a black .45 caliber Springfield Armory 1911 pistol bearing the serial number "NM 644652." Based on my training and experience, the firearm meets

the federal definition of a firearm. During Deputy Noriega's investigation, he entered the Springfield pistol's serial number into NCIC, which is a national database containing records including records of stolen firearms. The NCIC return based on the serial number showed that the pistol had been stolen from Denver, CO in February 2022. As such, I have probable cause to believe the firearm traveled in interstate commerce before its recovery in New Mexico.

20. I am aware that DNA evidence may be found on firearms. I believe the firearm seized from the vehicle in which GONZALEZ was a passenger may contain DNA. The firearm is presently in Homeland Security Investigation (HSI) evidence custody located in El Paso, TX. I intend to send the firearm, and DNA sample swabs obtained from it, to the Federal Bureau of Investigations (FBI) laboratory for DNA testing. I will request the laboratory compare any potential DNA found on the firearms, to the DNA of GONZALEZ.

21. Based on the details contained herein, I believe probable causes exists that GONZALEZ violated 18 U.S.C. §§ 922(g)(5) and 924, that is, Alien in Possession of a Firearm. As such, I would like to collect DNA samples from GONZALEZ to be utilized in the examination of the evidence collected in this matter.

**CONCLUSION**

22. Based on the aforementioned information, I believe probable cause exists to search GONZALEZ to collect DNA samples by buccal swabs, pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

Respectfully submitted,

_____
Gavin Hayes
Special Agent

Telephonically sworn and electronically signed on March 18, 2025:

_____
Honorable
United States Magistrate Judge

**ATTACHMENT A**

The person to be searched is Jose Adan GONZALEZ-Torres (DOB: ▮▮▮▮▮).

This is a photograph of Jose GONZALEZ-Torres:




This warrant authorizes the search of the person of Jose GONZALEZ-Torres. for the purpose of obtaining property described in Attachment B.

**ATTACHMENT B**

The property to be obtained are Deoxyribonucleic Acid (DNA) samples by way of buccal swabs.